THOMPSON *vs.* THOMPSON'S HEIRS.

APPEAL FROM THE COURT OF THE FIFTH JUDICIAL DISTRICT, FOR THE
PARISH OF ST. LANDRY, THE JUDGE THEREOF PRESIDING.

Under the plea of payment, where proof of actual payment of *a part* of the
debt is shown, and presumptive evidence that *all has been paid*, is
offered, it must be conclusive, even after the lapse of many years, or it
will be disallowed.

Actions on *hypothecary debts*, or for the *price* of *slaves*, evidenced by authen- <span style="float:right">Western Dist.</span>
tic acts according to the Spanish law, are only prescribed after the lapse <span style="float:right">*Sept.* 1837.</span>
of thirty years, from the time the *price* or *debt* is due.

THOMPSON
*vs.*
THOMPSON'S
HEIRS.

This is an action on a notarial act, executed the 21st August, 1815, by the attorney in fact of the plaintiff, to Sydalise Thompson, in which he sells and conveys to her a slave woman, named Becky, and her two infant children, named William and Louise, for the sum of one thousand dollars. The act was made single and signed by the plaintiff's attorney *alone*, before the notary and two witnesses.

On the 18th May, 1818, John Thompson executed before a notary, a confirmatory act of said sale, accepting and approving it on the part of his wife ; and on the 10th of November, 1831, this suit was instituted against the widow and heirs of John Thompson, for the *price* of said slaves, as specified in said act, without alleging a privilege or mortgage on the *things* sold, but simply praying judgment for the *price* and legal interest thereon.

The defendants pleaded the general issue ; denied specially that they were indebted to the plaintiff ; that if they ever were indebted in the obligation sued on, it had been long since paid.    They further pleaded prescription. and that the action was barred by lapse of time.

Upon these pleadings and issues, the cause was tried before the court.

The evidence showed, that when this sale was executed, Madame Thompson's husband was living, and attended to all the payments ; that the plaintiff was a relation, and in 1814 obtained a commission in the marine service, and the next year when leaving Louisiana, he made the sale of the slaves in question, who were then mortgaged for a debt which had to be paid off by Mrs. Thompson and her husband, before getting possession.

G. Chretien, witness for plaintiff, says, he made the sale as attorney for G. Thompson ; that at the time there existed a mortgage on the slaves, (Beckey and her children, William and Louise) in favor of Gradnigo, and they were in his

Western Dist.
Sept. 1837.

THOMPSON
vs.
THOMPSON'S
HEIRS.

possession ; that he paid, at the instance of Thompson, about two hundred and forty dollars principal, and some interest or costs ; that he has since been reimbursed by Thompson the sum he paid, which was, as well as he recollects, about three hundred dollars.

In addition to this, it was in proof, J. *Thompson* paid off a note of plaintiff's to J. H. Thompson, for three hundred and fifteen dollars ; and also one hundred and thirty-one dollars in satisfaction of a judgment for balance of price (and the costs) of the slave Becky, due by plaintiff since 1810 ; payment of fees to W. L. Brent, Esq., for defending these slaves against the creditors of G. Thompson, was shown to the amount of seventy-five dollars ; aggregate of actual payments proved, eight hundred and twenty-one dollars.

Presumption of complete payment was made, as resulting from the testimony of the following witnesses.

*C. Adams,* witness for plaintiff, was asked the following interrogatory : " Did or did not Gillis Thompson, the plaintiff, propose through you as agent or friend, after his return from the marine service, to J. Thompson or his wife, (now defendant) that if they would let him have Becky's two children, (William and Louise) he would give them two other likely young negroes of equal value ? Did you not make the proposition accordingly ? If you please, state the particulars of it, and also the answers of J. Thompson and wife thereto."

Witness answers : " *Yea ;* I cannot state the time G. Thompson, the plaintiff, *authorised me to make the offer,* but John Thompson *agreed to take it.*"

*Brent* says, on being asked if he had not heard the plaintiff say he was willing to buy them, or to give their full value in other negroes for the *two children* of Becky ; that the impression is on his mind that he did, but is not positive. .

*G. Chretien,* who sold the slaves for plaintiff, states further, that Mr. J. Thompson had paid, not only the amount of the purchase money of Becky and her two children, but *beyond* that sum, because when Gillis Thompson went away, he was very much indebted ; that several judgments existed against

WESTERN DIST.
*Sept.* 1837.

THOMPSON
*vs.*
THOMPSON'S
HEIRS.

him, and to have the free possession of said slaves, J. Thompson had been obliged to pay them over. Witness says, that J. Thompson had also some law-suits for that object."

*Witness* further states, that " he thinks the price for which the said slaves were sold, was the worth of them."

Records of suits and other evidence was produced, showing the embarrassments and insolvency of the plaintiff at the time of sale, as tending to raise the prescription of full payment ; especially as connected with his silence for so long a time before a demand of payment.

The district judge was of opinion, that the defendants had satisfactorily shown, that the whole price of the negroes sued for, had been paid long before the institution of suit. Judgment was given for the defendants, from which the plaintiff appealed.

*Bowen,* for the plaintiff, urged the reversal of the judgment. He contended, that the evidence relied on to raise the prescription of payment, was insufficient. Most of it was derived from the declarations of the defendant's husband, which were not legal proof. Some of the payments proved, should be allowed, but there was a balance due.

2. The plea of prescription should be overruled. This is an hypothecary action on a notarial act, which, by the laws in force at the time, is not prescribed until the lapse of thirty years. The case of *Goddard's heirs against Urquhart,* does not apply to this.

*Lewis,* for defendant, showed, that from the evidence of the plaintiff's embarrassments and indebtedness, when he left the state in 1815, at the time of this sale, that there was strong presumptive proof of complete payment of this demand, long before the suit. His silence for seventeen years, when in needy circumstances, and his proposal to exchange other negroes for the one he sold, without ever demanding the price, is also evidence that he considered the whole demand paid. There is proof of actual payment for a considerable amount.

WESTERN DIST.
Sept. 1837.

THOMPSON
vs.
THOMPSON'S
HEIRS,

2. This is a personal action. It is a simple demand for the *price* of certain slaves, without any claim of mortgage or privilege. Personal actions are, and were prescribed, even before the Louisiana Code, by *ten* years. See case of *Goddard's heirs* vs. *Urquhart.* 6 *Louisiana Reports*, 649.

*Carleton, J.*, delivered the opinion of the court.

This action is brought for the recovery of the sum of one thousand dollars, the price of three slaves, sold by the plaintiff to the defendants, on the 21st August, 1815.

The defendants' answer by denying generally, plead payment, and the prescription of five and ten years.

The cause was submitted to the court who gave judgment for the defendants; the plaintiff appealed.

We have carefully examined the testimony in the record, and think the court erred in coming to the conclusion, that the entire sum claimed by the petitioner had been paid. We think, on the contrary, it clearly appears from the evidence, there is still a balance of two hundred and fourteen dollars due him.

But defendants' counsel contends, that the plaintiff's claim is barred by the prescription of five and ten years. We think differently. This is an hypothecary debt ; and by the laws of Toro, promulgated in 1505, which must be our guide on this point, such actions are not prescribed under thirty years.

The 63rd law declares, " El derecho de executor por oblegacion personal se prescriba por diez anos ; y la accion personal y la executoria dada sobre ella sa prescriba por viente anos, y no menos ; pero donde en la obligation hay hipoteca, o donde la obligation es mixta, personal y real, la deuda se prescriba por triente anos, y no menos ; lo qual se guorde sin embargo de la ley del Rey Don Alonzo uestro progenitor, que puso, que la accion personal se prescribiere pour diez anos." (ley 6, tit. 15. lib. 4 R.)   3 nov. Rec. lib. 10, tit. 8, ley 5 p. 196.   See also the case of *Xanpi* vs. *Orso,* 11 *Louisiana Reports*, 57.

Under the plea of payment, where proof of actual payment of *a part* of the debt is shown, and presumptive evidence that *all has been paid,* must be conclusive, even after the lapse of many years, or it will be disallowed.

Actions on *hypothecary debts,* or for the *price* of slaves, evidenced by authentic acts, according to the Spanish law, are only prescribed after the lapse of thirty years, from the time the *price* or *debt* is due.

It is, therefore, ordered, adjudged and decreed, that the <span style="float:right">WESTERN DIST.<br>*Sept.* 1837.</span> judgment of the District Court be avoided and reversed; that the plaintiff have judgment for the sum of two hundred and fourteen dollars, with interest from the 16th of May, 1816, until paid, with costs in both courts.